**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

CASE NO.: 50-2023-CC-015090-XXXA-MB

SOFI LENDING CORP.,                  )
      Plaintiff,                         )
                       )
                       )
vs.                                  )
                       )
                       )
JONATHAN SOAVE,                      )
      Defendant,                        )
_____/

FILED BY _____

MAR 15 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

RESERVE ALL RIGHTS
RESERVE THE RIGHT TO AMEND

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that JONATHAN SOAVE, *pro se*, hereby submits this Notice of Removal

to remove the aforementioned case, being it a civil action arising under the Constitution, laws, or

treaties of the United States, for Federal question, from State Court and to the United States District

Court Southern District of Florida West Palm Beach Division, pursuant to 28 USC § 1441 and 28

USC § 1331. The separate Complaint addresses the parties involved, allegations and relief sought.

Respectfully submitted on this 15th of March, 2024.

by: *Jonathan Soave*

JONATHAN SOAVE
Pro Se Defendant
1903 SW 18th St
Boynton Beach, FL 33426

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished this ___15th___ of

March, 2024 to Plaintiff's counsel, at:

      KEILA ESTEVEZ, ESQ.
      ZWICKER & ASSOCIATES, P.C.
      700 W. Hillsboro Blvd
      Bldg 2 suite 201
      Deerfield Beach, FL 33411

          by: Jonathan Soave
          JONATHAN SOAVE
          Pro Se Defendant
          1903 SW 18th St
          Boynton Beach, FL 33426

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.:

SOFI LENDING CORP.,                          )
     First-party Plaintiff,                )
vs.                                          )
                                          )
SOFI BANK, N.A.,                             )
     Third-party Defendant,                )
vs.                                          )
                                          )
JONATHAN SOAVE,                              )
c/o Jonathan Soave - the living man          )       JURY TRIAL DEMANDED
     First-party Defendant,                )       HEARING IN EQUITY DEMANDED
     Third-party Plaintiff                 )       RESERVE THE RIGHT TO AMEND
_____/

## THIRD-PARTY PLAINTIFF'S COMPLAINT AND
## JURY TRIAL DEMAND

COMES NOW, Jonathan Soave, proceeding *in propria persona*, and files his Third-party Complaint against Third-party Defendant SOFI BANK, N.A. (hereinafter "SOFI BANK") and in support thereof states:

### PRO SE STATUS

Third-party Plaintiff JONATHAN SOAVE demands that his *pro se* status be recognized and treated by the Court as The United States Supreme Court, and US District Courts have held such status be recognized and treated. *Pro se* submissions are afforded wide interpretational latitude. *"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."* Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 20 I..Ed.2d 652 (1972); see also Estelle v. Gamble, 429 U.S. 97,106, 97 S.Ct. 285, 292, 50 I.Ed.2d 251 (1976); Gillihan v. Shillinger, 872 F.2d 935, 938 (10th Cir. 1989); Boddie v. Schnieder, 105 F.3d 857, 860 (2d

1

Cir. 1997). *"We hold pro se pleadings to a less stringent standard than pleadings drafted by attorneys"*. <u>Tannenbaum v. United States</u>, 148 F.3d 1262-1263 (11 th Cir.1998).

In addition, the Court is required to read the *pro se* complaint liberally and interpret it as raising the *strongest* arguments it suggests. <u>United States v. Akinrosotu</u>, 637 F.3d 165, 167 (2d Cir. 2011) (per curiam) (citation omitted); <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009). The Supreme Court has held that *pro se* complaints need not even plead specific facts; rather the complainant *"need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."* <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (internal quotation marks and citations omitted); cf. Fed. R. Civ. P. 8(e) *"Pleadings must be construed so as to do justice."*.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action and all counts under 28 USC § 1331.

2. Venue in this district is proper under 28 USC § 1391 because a substantial part of the events or omissions giving rise to this claim originated in this district.

3. Joinder in this district is proper, as to rule 20(a) since the claims arise out of the same transaction, occurrence, or series of transactions or occurrences, and there is a question of law common to all parties.

4. The events giving rise to the commencement of this action are in the interest of Law and Equity, and under the Constitution, laws, or treaties of the United States, pursuant to article III, section 2 of the Constitution.

5. The jurisdictional requirements of the court are satisfied.

## PARTIES

6. JONATHAN SOAVE, *ens legis,* is a naturalized Floridian through the power of naturalization found in 8 USC § 1101(a)(23), of Palm Beach County, Florida, which is located in this district.

7. Jonathan Soave, the man, is One of the People of Florida and domiciles in Palm Beach County, Florida, which is located in this district.

8. Jonathan Soave, the man, is the authorized representative for the *ens legis* JONATHAN SOAVE.

9. SOFI LENDING CORP. (hereinafter "SOFI LENDING") is a foreign for-profit corporation with a mailing address of 234 First Street, San Francisco, CA 94015. SOFI LENDING may be served process upon its registered agent Becky DeGeorge at 2710 Gateway Oaks Drive, Sacramento, CA.

10. SOFI BANK is a foreign for-profit corporation with a mailing address of 2750 E Cottonwood Pkwy Suite 300, Cottonwood Heights, UT 84121. SOFI BANK may be served process upon its registered agent Anthony Gallo at 2750 E Cottonwood Pkwy Suite 300 Salt Lake City, UT 84121.

## DEFINITIONS

11. "Negotiable" means "that which is capable of being transferred by assignment; a thing, the title to which may be transferred by a sale and indorsement or delivery", Bouvier's Law Dictionary, 1856 Edition.

12. A Negotiable instrument means an unconditional promise or order to pay a fixed amount of money, per UCC § 3-104(a).

13. An "instrument" means a negotiable instrument, per UCC § 3-104(b).

14. An instrument is a "note" if it is a promise and is a "draft" if it is an order, per UCC § 3-104(e).

15. Federal Reserve Notes are promissory notes.

16. Federal Reserve Notes are negotiable instruments.

## GENERAL FACTUAL ALLEGATIONS

The following factual allegations will be laid out in a chronological order, as much as possible:

17. Third-party Plaintiff has *never* entered into a contract with First-party Plaintiff SOFI LENDING.

18. Third-party Defendant SOFI BANK has had access to Federal Reserve financial services since 11/16/21[1], and according to the Federal Reserve "[t]hese institutions either have their own Reserve Bank master account or access Reserve Bank financial services by settling transactions in the master account of another depository institution.".

19. JONATHAN SOAVE entered into a contract with SOFI BANK on July 5th, 2022, evidenced by a copy of a loan agreement as exhibit A.

20. Said loan agreement is governed under Utah law, per page 4.

21. Said loan agreement contained an unconditional promise to pay along with the ability for assignment, transfer, and/or negotiation.

22. Said loan agreement is a negotiable instrument, instrument, or note.

23. All promissory notes are collateral securities, per 12 USC § 412.

24. JONATHAN SOAVE gave permission to SOFI BANK to access and to use his credit.

25. On 6/7/23, JONATHAN SOAVE tendered payment to SOFI BANK via a negotiable instrument numbered 982306001 (Exhibit B), in the amount of $60,000.00 along with instructions for final payoff and satisfaction.

26. Said instrument was to be presented to the US Treasury or Federal Reserve for processing.

27. While SOFI BANK received said instrument from JONATHAN SOAVE on 6/12/23 via certified mail parcel no. 9589071052700612656272, it failed to credit his account.

---

[1] Master Account and Services Database. (n.d.). Board of Governors of the Federal Reserve System. Retrieved March 12, 2024, from
https://www.federalreserve.gov/paymentsystems/master-account-and-services-database-existing-access.htm

28. Also on 6/7/23, JONATHAN SOAVE served an Affidavit to SOFI BANK (Exhibit C), in the alternative, demanding the investigation and validation of the alleged debt pursuant to the *Fair Debt Collection Practices Act* via a sworn statement and the production of documentary evidence including the full accounting as evidence that a negative balance did in fact exist, within 30 days.

29. This correspondence also included an offer to contract in the form of a fee schedule, giving notice of specific prohibited actions, its corresponding law and billable amounts.

30. SOFI BANK failed to respond.

31. SOFI BANK created an implied contract with JONATHAN SOAVE through acquiescence.

32. JONATHAN SOAVE served three additional letters to SOFI BANK, dated 7/8/23, 7/19/23, and 8/3/23 demanding proper credit of the account and resolution of the aforementioned investigation.

33. SOFI BANK failed to respond.

34. On 9/5/23, JONATHAN SOAVE served a second Affidavit upon SOFI BANK (exhibit D), giving notice of its failure to respond within the allowed time and estopping SOFI BANK from pursuing the matter of the invalidated alleged debt.

35. SOFI BANK did not rebut said Affidavit.

36. SOFI BANK acquiesced to JONATHAN SOAVE's contract terms a second time.

37. On 9/5/23, JONATHAN SOAVE also served an invoice to SOFI BANK, numbered 230902 in the amount of $2,795,000.00 (exhibit E), for which payment was demanded. This mail parcel was delivered on 9/11/23 via certified mail no. 9589071052700712482993.

38. SOFI BANK did not object to the invoice nor paid the invoice.

39. On 9/18/23, SOFI BANK mailed an unsigned letter dated 9/13/23 to JONATHAN SOAVE alleging that it had validated the alleged debt while providing none of the documentation

demanded. SOFI BANK acknowledged in this letter that upon receiving notification that the alleged debt remained disputed, SOFI BANK would "obtain verification".

40. On 9/23/23, JONATHAN SOAVE replied to the above correspondence rebutting any assumption on part of SOFI BANK that it had fulfilled the respective validation and verification of the alleged debt previously demanded by JONATHAN SOAVE, and reaffirmed the dispute.

41. SOFI BANK failed to respond.

42. On 11/22/23, First-party Plaintiff SOFI LENDING served a complaint against First-party Defendant JONATHAN SOAVE, case no. 50-2023-CC-015090-XXXA-MB, 15th Judicial Circuit for Palm Beach County, Florida.

43. On 12/4/23, First-Party Defendant JONATHAN SOAVE filed his timely answer with the Clerk of the court regarding the aforementioned suit and reserved the right to amend.

44. While First-party Plaintiff SOFI LENDING has filed suit against First-party Defendant JONATHAN SOAVE, the First-party Defendant does not have a contract with the First-party Plaintiff.

## THIRD-PARTY COMPLAINT

### COUNT I - BREACH OF CONTRACT, NON-PERFORMANCE

Third-Party Plaintiff JONATHAN SOAVE restates the aforementioned paragraphs 1 through 27, as if fully restated herein, in support hereof and adds further.

45. According to the note, the Third-party Defendant SOFI BANK has the contractual obligation to apply payments to Third-party Plaintff's account.

46. According to the note, Third-party Plaintiff has the right to prepay without penalty.

47. According to the note, prepayments are to be applied to the principal balance.

48. Third-party Defendant SOFI BANK breached the terms of the note when it failed to apply the Third-party Plaintiff's payment.

49. Third-party Defendant SOFI BANK failed its implied duty to maintain the proper accounting of the Third-party Plaintiff's account.

50. Third-party Plaintiff JONATHAN SOAVE made multiple documented demands to Third-party Defendant SOFI BANK for performance of its contractual duties.

51. Third-party Defendant SOFI BANK failed to respond to JONATHAN SOAVE's concerns and demands.

52. Third-party Defendant SOFI BANK failed to perform its contractual duties.

53. As a result of said failure, Third-party Plaintiff JONATHAN SOAVE suffered damages as follows: (1) in the amount of $60,000.00, (2) damaged credit worthiness with derogatory reporting; (3) undue stress; (4) inability to obtain credit; (5) affected his mode of living.

## COUNT II - BREACH OF TRUST (CIVIL)

Third-Party Plaintiff JONATHAN SOAVE restates the aforementioned paragraphs 1 through 27, as if fully restated herein, in support hereof and adds further.

54. Third-party Defendant SOFI BANK had a position of trust in properly accepting, handling and applying payments to JONATHAN SOAVE's account.

55. Third-party Defendant SOFI BANK had previously carried its duties under said position of trust and had properly accepted, handled and applied payments to JONATHAN SOAVE's account on multiple occasions.

56. JONATHAN SOAVE entrusted SOFI BANK to carry the above-mentioned duties properly and in his interest and had no reason to believe otherwise.

57. SOFI BANK breached JONATHAN SOAVE's trust when it failed to carry its entrusted duties and to properly apply and credit his account upon payment received.

58. JONATHAN SOAVE made multiple demands for a resolution in this matter, which SOFI BANK failed to respond to.

59. As a result of said breach of trust, Third-party Plaintiff JONATHAN SOAVE suffered damages as follows: (1) in the amount of $60,000.00, (2) damaged credit worthiness with derogatory reporting; (3) undue stress; (4) inability to obtain credit; (5) affected his mode of living.

## COUNT III - NEGLIGENCE

Third-Party Plaintiff JONATHAN SOAVE restates the aforementioned paragraphs 1 through 33, as if fully restated herein, in support hereof and adds further.

60. SOFI BANK's negligent behavior damaged JONATHAN SOAVE, as follows: (1) in the amount of $60,000.00, (2) damaged his credit with derogatory reporting; (3) undue stress; (4) inability to obtain credit; (5) affected his mode of living

## COUNT IV - CONVERSION

Third-Party Plaintiff JONATHAN SOAVE restates the aforementioned paragraphs 1 through 33, as if fully restated herein, in support hereof and adds further.

61. The aforementioned instrument in paragraph 25 was personal property of JONATHAN SOAVE.

62. SOFI BANK received specific instructions on how to handle said instrument.

63. SOFI BANK appropriated JONATHAN SOAVE's property without lawful justification.

64. Despite demands made by JONATHAN SOAVE, SOFI BANK wrongfully deprived him of access to his instrument and refused to return it or to credit him with the value contained therein.

65. As a result of SOFI BANK's tortuous actions JONATHAN SOAVE has been damaged in the amount of $60,000.00.

"A conversion is the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification. [451" *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 443 (Pa. 1964).

### COUNT V - UNJUST ENRICHMENT (1ST COUNT)

Third-Party Plaintiff JONATHAN SOAVE restates the aforementioned paragraphs 1 through 27, as if fully restated herein, in support hereof and adds further.

66. JONATHAN SOAVE conferred a benefit upon SOFI BANK when he delivered his instrument for processing, per aforementioned paragraph 25.

67. JONATHAN SOAVE expected to be given the proper credit for this payment, as evidenced by the instructions enclosed, exhibit C.

68. SOFI BANK received notice and knew of the aforementioned intentions of JONATHAN SOAVE.

69. JONATHAN SOAVE is entitled to proper compensation and/or credit for his instrument.

70. SOFI BANK voluntarily accepted and retained this benefit without giving JONATHAN SOAVE proper credit for his instrument.

71. It would be inequitable for SOFI BANK to accept and retain the benefits of JONATHAN SOAVE's instrument without compensating him for the value thereof.

72. JONATHAN SOAVE is owed the amount of $60,000.00.

### COUNT VI - UNJUST ENRICHMENT (2ND COUNT)

Third-Party Plaintiff JONATHAN SOAVE restates the aforementioned paragraphs 1 through 24, as if fully restated herein, in support hereof and adds further.

73. Notes are used as *tender* for application for Federal Reserve Notes with the Federal Reserve, per 12 USC § 412.

74. Tender is defined as "an offer of money", per Black's Law Dictionary, 4th edition.

75. Notes contain a cash value.

76. The value of a note is determined by the sum of the principal and interest and/or finance charge amounts of said note.

77. JONATHAN SOAVE's note contained $59,953.20 in value.

78. JONATHAN SOAVE conferred a benefit upon SOFI BANK when he delivered his note.

79. SOFI BANK benefited from receiving JONATHAN SOAVE's note.

80. SOFI BANK unjustly did not compensate JONATHAN SOAVE for receiving the benefits of his note.

81. It would be inequitable for SOFI BANK to accept and retain the benefits of said note without compensating JONATHAN SOAVE.

82. JONATHAN SOAVE is owed $59,953.20

## COUNT VII - ACCOUNT STATED

Third-Party Plaintiff JONATHAN SOAVE restates the aforementioned paragraphs 1 through 41, as if fully restated herein, in support hereof and adds further.

83. JONATHAN SOAVE and SOFI BANK have had a long standing business relationship.

84. Before commencement of this action, JONATHAN SOAVE served an invoice to SOFI BANK, per aforementioned paragraph 37.

85. SOFI BANK received the above correspondence.

86. Demand was made upon SOFI BANK.

87. SOFI BANK did not object to the invoice.

88. SOFI BANK expressly or impliedly agreed upon the balance.

89. SOFI BANK has not paid the invoice, which is due and owing.

90. SOFI BANK owes Respondent $2,795,000.00 that is due.

91. JONATHAN SOAVE has performed all conditions precedent to bringing this action, or the same have been waived by SOFI BANK.

## **CONCLUSION**

THEREFORE, the actions and omissions of SOFI BANK have created inequities and damaged JONATHAN SOAVE financially, emotionally, and otherwise, for which relief is sought.

Third-party Plaintiff JONATHAN SOAVE demands the Court to (1) give the his pleadings the liberal construction and interpretation of the strongest arguments it suggests, as has been held to *pro se* litigants, (2) a TRIAL BY JURY, and (3) judgment in his favor and against the Third-party Defendant SOFI BANK on all counts of his Complaint, ordering as follows:

(i) perform its contractual duties; (ii) perform its entrusted duties; (iii) apply $60,000.00 in credits to JONATHAN SOAVE's account for negotiable instrument tendered; (iv) pay $59,953.20 for note delivered; (v) rectify the accounting by removing all added unnecessary fees and interest incurred after the date which payment was tendered; (vi) issue a refund of any unused funds via check; (vii) discharge the debt; (viii) remove *all* derogatory entries from JONATHAN SOAVE's consumer credit profile with all consumer reporting agencies and update it to reflect a status of *"paid as agreed"* and *"account closed"*; (ix) payment of outstanding invoice number 230902 in the amount of $2,795,000.00; (x) pay damages in thrice of the amount of the payment breach; (xi) punitive damages as applicable; (xii) payment of court and attorney fees and; (xiii) any other relief the court may see as just and proper.

RESPECTFULLY SUBMITTED on this _15th_ of March, 2024.

by: Jonathan Soave

JONATHAN SOAVE
All rights reserved
Pro Se Defendant
1903 SW 18th St
Boynton Beach, FL 33426

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished this $15TH$ of

March, 2024 to Plaintiff's counsel, at:

> KEILA ESTEVEZ, ESQ.
> ZWICKER & ASSOCIATES, P.C.
> 700 W. Hillsboro Blvd
> Bldg 2 suite 201
> Deerfield Beach, FL 33411

by: *Jonathan Soave*
JONATHAN SOAVE
Pro Se Defendant
1903 SW 18th St
Boynton Beach, FL 33426

# Exhibit A

This is a copy view of the authoritative Copy held by the designated custodian

## SOFI PERSONAL LOAN TRUTH IN LENDING ACT DISCLOSURE

Date: July 5, 2022

**BORROWER:**

JONATHAN SOAVE
3500 Emerson Ave S
306
Minneapolis, MN 55408-3960

**CREDITOR:**

SoFi Bank, N.A.
2750 East Cottonwood Pkwy, Suite 300
Cottonwood Heights, UT 84121

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you on your behalf. | The dollar amount you will have paid when you have made all payments as scheduled. |
| **17.24%** | **$19,953.20** | **$40,000.00** | **$59,953.20** |

**YOUR PAYMENT SCHEDULE WILL BE**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 59 | $999.22 | Monthly beginning 08/05/2022 |
| 1 | $999.22 | 07/05/2027 |

**Prepayments:**
If you pay the loan off early, you will not have to pay a penalty.

**Fixed Interest Rate:** This is a Fixed Interest Rate transaction. Your Fixed Interest Rate is 17.22%. Your Fixed Interest Rate will not change over the term of the loan.

**Estimates:**
All numerical calculations except for the AutoPay Discount are estimates. The Annual Percentage Rate calculation assumes a 12 month 360 day year although interest will accrue daily based on the actual number of days in the calendar year.

See your loan agreement for any additional information about nonpayment, default, any required payment in full before the scheduled date and prepayment refunds and penalties.

**AutoPay Discount:**
If you make monthly principal and interest payments by an automatic, monthly deduction from a savings or checking account, the Fixed Interest Rate will be reduced one quarter of one percent (0.25%) for so long as you continue to make such automatic, electronic monthly payments.

**ITEMIZATION OF AMOUNT FINANCED**

| | | |
|---|---|---|
| **Amount Given to You Directly** | | **$40,000.00** |
| **Amount paid to other(s) on your behalf:** | | **$0** |
| **Amount Financed** (Total Amount Provided) | | **$40,000.00** |
| Prepaid finance charges (Origination Fee) | + | **$0.00** |
| Total Loan Amount | = | **$40,000.00** |

This is a true and accurate copy viewable as confirmed by the designated custodian

Lender:

SOFI BANK, N.A.
2750 East Cottonwood Pkwy, Suite 300
Cottonwood Heights, UT 84121
www.sofi.com

Borrower Name:

JONATHAN SOAVE

**Loan Agreement for SoFi Bank, N.A. Personal Loan Program**

This Loan Agreement applies to, and is a part of, my Application. My signature on the Application certifies that I have read, understand, and agree to this Loan Agreement. In this Loan Agreement, except as otherwise indicated, the words "I," "me," "my," and "mine" mean all parties obligated hereunder, including the Borrower and any Co-Borrower/Joint Applicant, unless the language refers to only one or the other. The words "you," "your," "yours," and "Lender" mean **SOFI BANK, N.A.**, Cottonwood Heights, Utah, its successors and assigns, and any other holder of my Loan.

**A. AGREEMENT TO PAY**
I agree to pay you, or YOUR SUCCESSORS OR ASSIGNS, the sum of the total principal amount of the Loan, which includes an amount equal to the Loan Origination Fee, if any, described in the Disclosure Statement issued to me under the Truth in Lending Act (the "Total Loan Amount"); and as set forth in this Loan Agreement, interest on the Total Loan Amount; interest on any unpaid accrued interest added to the Total Loan Amount; reasonable costs of collection and attorney's fees; and other fees, charges and costs as provided in this Loan Agreement.

**B. IMPORTANT – READ THIS CAREFULLY**
1. By completing and signing the Application, and submitting it to you, either directly or through some other person, I am requesting that you make a Loan to me on the terms described in this Loan Agreement and in an amount equal to all or part of the Loan Amount Requested. When you receive my Application, you are not agreeing to lend me money. You have the right not to make a Loan or to lend an amount less than the Loan Amount Requested. If you decide to make a Loan to me, you will disburse the Loan funds either (a) directly to me electronically or by sending a check to me, or (b) directly to the holders of my unsecured consumer debts as specified by me in my Application ("Prior Debts").
2. I may cancel my application without any fee or penalty prior to funding of the loan, as long as I provide you with sufficient advance notice to stop the loan funding.
3. Decreasing the Total Loan Amount– You can decrease the Total Loan Amount (i) based on updated payoff information you subsequently receive on the Prior Debts I have identified in my Application, (ii) if I ask you in writing to remove a Prior Debt from this Loan after I provide this signed Loan Agreement

but prior to disbursement, or (iii) by refusing to disburse loan proceeds to the holders of my Prior Debts if doing so is prohibited by law.
4. Updated Payoff Information– If after loan proceeds are disbursed on my behalf, I receive updated payoff information showing that additional amounts remain owing on the Prior Debts I have identified for payoff, I will promptly pay the holders of my Prior Debts the additional amounts that remain owing on my Prior Debts and you will not be responsible in any way for paying off those amounts.
5. **HOW I AGREE TO THE TERMS OF THIS LOAN.** If you agree to make a Loan to me, you will send me a Disclosure Statement under the Federal Truth in Lending Act. The Disclosure Statement will tell me the Total Loan Amount, the annual percentage rate on my Loan, and the amount of any fees. The Disclosure Statement is incorporated herein by this reference. My contractual obligation on this Loan Agreement will begin when loan proceeds are disbursed to me or to the holders of my Prior Debts. To the extent any information in the Disclosure Statement conflicts with the information in this Loan Agreement, the information in the Disclosure Statement governs.

**C. DEFINITIONS**
1. **"Application"** means the Application, whether in paper or electronic form, which incorporates this Loan Agreement, by which I request that you make a Loan to me, and agree to repay any Loan that you make on the terms set forth in this Loan Agreement.
2. **"Disbursement Date"** means the date you issue money to me or to the holders of my Prior Debts.
3. **"Disclosure Statement"** means the closed-end consumer credit disclosure statement as required by the federal Truth-in-Lending Act provided to me in connection with the Loan.
4. **"Co-Borrower/Joint Applicant"** means for purposes of this Agreement, a co-borrower or joint applicant.
5. **"Loan"** means all sums disbursed to me or the holders of my Prior Debts, all amounts added to the principal balance, including any loan origination fee, and all interest and other amounts due as provided in this Loan Agreement.
6. **"Loan Amount Requested"** means the dollar amount of the Loan requested by me in my Application.
7. **"Agreement"** means this Loan Agreement setting the terms applicable to my Loan. The Term "Agreement" also includes the Application and the Disclosure Statement relating to the Loan I obtain subject to the terms of this Agreement. In the event of any inconsistencies between terms in this Loan Agreement and the Disclosure Statement, the terms of the Disclosure Statement shall govern.
8. **"Repayment Period"** means the period beginning on the Disbursement Date and continuing for the number of scheduled installment payments as set forth in my Disclosure Statement.

**D. INTEREST**
1. **Accrual** – Beginning on the Disbursement Date, interest will accrue at the Fixed Interest Rate indicated on the Disclosure Statement for the term of my Loan, on the principal balance of my Loan outstanding from time to time. Interest will be calculated on a daily simple interest basis according to the outstanding principal balance each day during the term of the

This is a copy view of the Authoritative Copy held by the designated custodian

Loan. The daily interest rate will be equal to the annual interest rate in effect on that day, divided by the actual number of days in that calendar year.

2.   **Capitalization** – I agree that you may, at your option, and unless otherwise prohibited by applicable law, add all accrued and unpaid interest to the principal balance of my Loan ("capitalized interest") at the end of any authorized period of forbearance. In all cases, thereafter, interest will accrue on the new principal balance. In addition, to the extent permitted by applicable law, if I am in default on my Loan, you may, at your option, add all accrued and unpaid interest to the principal balance of my Loan upon such default. Thereafter, interest will accrue on the new principal balance at the Fixed Interest Rate.

3.   **Calculation** – The Fixed Interest Rate will be identified on the Disclosure Statement you send me. If my loan has a Fixed Interest Rate it will not increase or decrease over the life of my Loan. If at any time the Fixed Interest Rate as provided in this Section is not permitted by applicable law, interest will accrue at the highest rate allowed by applicable law.

### E.   TERMS OF REPAYMENT

1.   **Repayment Period** – The Repayment Period will begin on the Disbursement Date and will continue for the period specified in the Disclosure Statement. The amounts shown on my monthly statements will be consecutive monthly installments of principal and interest in approximately equal amounts over the number of months in the Repayment Period. During the Repayment Period, you will send me monthly statements electronically (showing Total Loan Amount and the amount of my monthly payment that is due). I will make monthly payments in the amounts and no later than the payment due dates shown on my electronic billing statements until I have paid all of the principal and interest and any other charges I may owe on my Loan.

2.   **Amounts Owing at the End of the Repayment Period** – Since interest accrues daily upon the unpaid principal balance of my Loan, if I make payments after my payment due dates, I may owe additional interest. If I have not paid other fees and charges, I will also owe additional amounts for those fees and charges. In such cases you will increase the amount of my last monthly payment to the amount necessary to repay my Loan in full.

3.   **Application of Payments** – To the extent permitted by applicable law, payments will be applied first to fees and charges, then to accrued interest to the date payment is received, and then any remainder to the principal balance of my Loan.

4.   **Borrower Benefits** – I may be entitled to the following borrower benefit by meeting the criteria listed below: Electronic Payment Benefit (AutoPay): If I agree to make monthly principal and interest payments by an automatic, monthly deduction from a savings or checking account and follow your procedures to do so, my Fixed Interest Rate will be reduced by one quarter of one percent (0.25%) for so long as I continue to make such automatic, electronic monthly payments. This benefit will discontinue and be lost for periods in which I do not pay by automatic deduction from my savings or checking account. This benefit is suspended during periods of forbearance. Direct Deposit Discount: To be eligible to potentially receive an additional one quarter of one percent (0.25%) interest rate reduction for setting up direct deposit with a SoFi Checkings and Savings account offered by SoFi Bank, N.A. ("Direct Deposit Discount") I must first set up AutoPay with a SoFi Checking and Savings account within 20 days of the funding of my Loan ("Eligible Participant"). Once eligible,

Eligible Participants will receive the Direct Deposit Discount during periods for which they have enabled payroll direct deposits of at least $1,000/month to a SoFi Checking and Savings account in accordance with SoFi's reasonable procedures and requirements to be determined at SoFi's sole discretion. This Direct Deposit Discount will be lost during periods in which SoFi determines I have turned off direct deposits to my SoFi Checking and Savings account. I am not required to enroll in autopay or direct deposits to receive a Loan.

### F.   ORIGINATION FEE

You may charge me a loan origination fee when loan proceeds are disbursed. The total amount of the estimated loan origination fee, if any, will be disclosed to me on my Disclosure Statement. The amount of the loan origination fee, if any, will be deducted from my loan proceeds and paid to the Lender when my Loan is disbursed. If I prepay this Loan in full or in part at any time, I understand that I will not be entitled to a refund of any part of this loan origination fee unless required by applicable law.

### G.   RIGHT TO PREPAY

I have the right to prepay all or any part of my Loan at any time without penalty. Any partial payment will be credited against my Loan Balance as described in Section E.3.

### H.   FORBEARANCE

You may give me a forbearance in three (3) month increments if I am temporarily unable to make my scheduled loan payments for unemployment. Requests for forbearance must be submitted in accordance with your reasonable procedures and requirements, and the decision to grant my request for forbearance shall be solely at your discretion. During any period of forbearance, regularly scheduled payments of principal on my Loan may be deferred to the extent permitted by applicable law. Except as described above, I understand that I will remain responsible for all interest accruing during any period of forbearance and that to the extent permitted by applicable law you may add any interest that I do not pay during any forbearance period to the principal balance as described in Section D.2. I understand that any periods of forbearance will extend my Repayment Period as defined in Section E.1 unless prohibited by applicable law.

### I.   COLLECTION COSTS

Unless prohibited by applicable law, I agree to pay you all amounts, including reasonable attorneys' fees, and collection agency, court and other collection costs that you incur in collecting or enforcing the terms of my Loan (collectively, "Collection Costs") to the extent permitted by applicable law. The Collection Costs that I agree to pay may also include fees and costs incurred in connection with any appellate or bankruptcy proceedings to the extent permitted by applicable law.

### J.   DEFAULT

To the extent permitted by applicable law, I will be in default and you have the right to give me notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under this Agreement, are due and payable at once (subject to any applicable law which may give me a right to cure my default) if: (1) I fail to make any monthly payment to you within thirty (30) days of its due date; or (2) I fail to notify you in writing of a change in my name, address,

telephone number, or employment status; or (3) I become the subject of proceedings under the United States Bankruptcy Code or assign my assets for the benefit of my creditors; or (4) I break any of my other agreements in my Application or this Agreement; or (5) I make any false, misleading or materially incomplete statement in applying for this Loan, or to you at any time during the Repayment Period; or (6) I am declared legally incompetent or incapacitated. If I default, you may add all accrued and unpaid interest and other amounts to the principal balance of my Loan upon such default as described in Section D.2. If I default, I will be required to pay interest on this Loan accruing after default at the same rate of interest applicable to this Loan prior to my default.

**K. NOTICES**

1. I will send written notice to you within ten (10) days after any change in my name, address, e-mail address, telephone number or employment status. I will send such written notice to **SOFI BANK, N.A.**, 2750 East Cottonwood Pkwy, Suite 300, Cottonwood Heights, UT 84121, or any future address or electronic method you provide me.

2. Any communication between you and the Borrower or any Co-Borrower/Joint Applicant will be binding on the Borrower and any Co-Borrower/Joint Applicant and all disclosures provided by you to the Borrower or Co-Borrower/Joint Applicant will be deemed simultaneously received by all parties. Any notice required to be given to me by you may be given to the Borrower or any Co-Borrower/Joint Applicant and shall be binding on, and deemed received by, the Borrower and any Co-Borrower/Joint Applicant will be effective when mailed by first class mail to the latest address you have for me, or when transmitted by electronic communication to the latest e-mail address you have for me.

**L. CREDIT REPORTING AND INFORMATION SHARING**

1. You or your agents may report information about my account to credit bureaus. Late payments, missed payments or other defaults in my account may be reflected in my credit report.

2. I understand that the reporting of information about my account to credit reporting agencies may adversely affect my credit rating and my ability to get other credit.

3. I also agree that you may report my name, the fact that I have taken a Loan from SOFI BANK, N.A. and information about my payment history on my account, including if I default, to investors who own a participation interest or other interest in my Loan.

**M. JOINT AND SEVERAL LIABILITY**

1. The liability of any Co-Borrower/Joint Applicant to repay this loan in full is in addition to and not in lieu of the obligations of the primary Borrower to repay the loan in full. The Co-Borrower/Joint Applicant agrees to abide by the terms and conditions of this Agreement or any other documents provided or executed as part of the application process as if an original signatory.

2. Lender has sole discretion to proceed against both the Borrower and any Co-Borrower/Joint Applicant to recover all the amounts due under this Loan Agreement. Further, you can accept instructions from the Borrower or any Co-Borrower/Joint Applicant.

**N. ADDITIONAL AGREEMENTS**

1. I understand that you are located in Utah and that my

Application will be entered into in the same state. CONSEQUENTLY, UNLESS PROHIBITED BY APPLICABLE LAW, THE PROVISIONS OF MY LOAN, INCLUDING THIS AGREEMENT, WILL BE GOVERNED BY UTAH LAW, WITHOUT REGARD TO CONFLICT OF LAW RULES, except that Section P (Arbitration Agreement) is governed by the Federal Arbitration Act and not by any state law governing arbitration.

2. I agree to update the information on my Application whenever you ask me to do so.

3. My responsibility for paying my Loan is unaffected by your failure to notify me that a required payment has not been made. You may delay, fail to exercise, or waive any of your rights on any occasion without losing your entitlement to exercise the right at any future time, or on any future occasion. You will not be obligated to make any demand upon me, send me any notice, present my Application to me for payment or make protest of non-payment to me before suing to collect my Loan if I am in default, and to the extent permitted by applicable law, I hereby waive any right I might otherwise have to require such actions. Without losing any of my rights under this Agreement, you may accept late payments or partial payments. **I will not send you partial payments marked "paid in full," "without recourse" or with other similar language unless those payments are marked for special handling, and sent to SOFI BANK, N.A., 2750 East Cottonwood Pkwy, Suite 300, Cottonwood Heights, UT 84121, or to such other address or electronic method as I may be given in the future.**

4. **TCPA Consent** Notwithstanding any current or prior election to opt in or opt out of receiving telemarketing calls or SMS messages (including text messages) from you, your agents, representatives, affiliates or anyone calling on your behalf, I expressly consent to be contacted by you, your agents, representatives, affiliates, or anyone calling on your behalf for any and all purposes arising out of or relating to my Loan, at any telephone number, or physical or email or electronic address I provide or at which I may be reached. Telephone numbers I provide include those I give to you, those from which I or others contact you with regard to my account, or which you obtain through other means. I agree you may contact me in any way, including SMS messages (including text messages) calls using prerecorded messages or artificial voice, and calls and messages delivered using automatic telephone dialing systems (auto-dialer) or an automatic texting system. Automated messages may be played when the telephone is answered, whether by me or someone else. In the event that an agent or representative calls, he or she may also leave a message on my answering machine, voice mail, or send one via text. I consent to receive SMS messages (including text messages), calls and messages (including prerecorded and artificial voice and autodialed) from you, your agents, representatives, affiliates or anyone calling on your behalf at the specific number[s] I have provided to you, or numbers you can reasonably associate with my loan (through skip-trace, caller ID capture or other means), with information or questions about your application or loan. I certify, warrant and represent that the telephone numbers that I have provided to you are my contact numbers. I represent that I am permitted to receive calls at each of the telephone numbers I have provided to you. I agree to promptly alert you whenever I stop using a particular telephone number. I also consent to you and your agents, representatives, affiliates or anyone calling on your behalf to communicate with any persons listed in my Application as employment and personal references. YOU AND YOUR AGENTS,

This is a copy view only as authoritative Copy is by the designated custodian

REPRESENTATIVES, AFFILIATES AND ANYONE CALLING ON YOUR BEHALF MAY USE SUCH MEANS OF COMMUNICATION DESCRIBED IN THIS SECTION EVEN IF I WILL INCUR COSTS TO RECEIVE SUCH PHONE MESSAGES, TEXT MESSAGES, E-MAILS OR OTHER MEANS.

5. **Call Recording** – I agree that you and your agents, representatives, affiliates or anyone calling on your behalf may contact me on a recorded line.

6. I may not assign my Loan Agreement (including my Application) or any of its benefits or obligations. You may assign my Loan Agreement (including my Application) at any time. The terms and conditions of my Loan Agreement apply to, bind, and inure to the benefits of your successors and assigns.

7. If any provision of this Agreement is held invalid or unenforceable, that provision shall be considered omitted from this Agreement without affecting the validity or enforceability of the remainder of this Agreement.

8. A provision of this Agreement may only be modified if jointly agreed upon in writing by you and me.

9. All parties to this Loan Agreement agree to fully cooperate and adjust all typographical, computer, calculation, or clerical errors discovered in any or all of the loan documents including the Loan Agreement and Disclosure Statement. In the event this procedure is used, I will be notified and receive a corrected copy of the changed document.

10. All payments on my Loan will be made in United States dollars, and if paid by check or draft, drawn upon a financial institution located in the United States. My obligation to make monthly payments in accordance with Section E.1 is not affected by any withholding taxes required to be paid under any foreign law, and notwithstanding any such law that requires withholding taxes on my payments under my Loan, I agree to make all required payments under this Loan to you or any subsequent holder.

11. My failure to receive a coupon book or statement whether electronically or by mail does not relieve me of my obligation to make any required loan payments in accordance with the terms and conditions of this Agreement.

12. Limits on Interest, Fees, Charges or Costs – If a law which applies to this Loan and which sets maximum limits on interest, fees, charges or costs collected or to be collected in connection with this Loan exceed permitted limits, then:

(a) Any such interest, fees, charges or costs shall be reduced by the amount necessary to comply with the permitted limits, and (b) any sums already collected from me which exceed permitted limits will be refunded to me. You may choose to make the refund by reducing the amounts I owe under this Agreement.

13. **MILITARY LENDING ACT:** If I am a member of the armed forces or a dependent of such member covered by the federal Military Lending Act, then any provision of this Loan, including the terms in this Agreement, that is not permitted or enforceable against me under the Military Lending Act shall not apply to me. If I would like more information about whether I am covered by the Military Lending Act, I may contact you at (855) 731-5709. IF I AM COVERED BY THE MILITARY LENDING ACT, THEN THE FOLLOWING APPLIES: Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependents may not exceed an annual percentage rate of thirty-six percent (36%). This rate must include, as applicable to the credit transaction or account: (1) the costs associated with credit insurance

premiums; (2) fees for ancillary products sold in connection with the credit transaction; (3) any application fee charged (other than certain application fees for specified credit transactions or accounts); and (4) any participation fee charged (other than certain participation fees for a credit card account). To obtain an oral statement regarding the Military Annual Percentage Rate and a description of the payment obligation, I may call the following toll-free phone number: (855) 731-5709.

14. If I sign this Loan Agreement electronically, then: (i) You agree to keep an electronic record of the signed Loan Agreement and provide a printed copy to me upon request, and (ii) I agree to download and print a copy of this Loan Agreement for my records when I sign it. I understand and agree that my electronic signature or a facsimile of my signature will be just as valid as my handwritten signature on a paper document.

15. *NOT NEGOTIABLE. This Loan Agreement is not a promissory note or other "instrument" (as such term is defined in Article 9 of the Uniform Commercial Code). The delivery or possession of this Loan Agreement shall not be affected to transfer any interest in the Lender's rights under this Loan Agreement or to create or affect any priority of any interest in the Lender's rights under this Loan Agreement over any other interest in the Lender's rights under this Loan Agreement.*

## O. CERTIFICATIONS AND AUTHORIZATIONS OF BORROWER

1. I declare under penalty of perjury under the laws of the United States of America that the following is true and correct. I certify that the information contained in my Application is true, complete and correct to the best of my knowledge and belief and is made in good faith. I certify that the loan proceeds will only be used for unsecured personal, family, or household expenses and not for real estate, business purposes, investment, purchases of securities, post-secondary education or short-term bridge financing.

2. I authorize you or your agents to: (1) gather and share from time to time credit-related, employment and other information about me (including any information from the Loan Agreement or about this Loan or my payment history) from and with consumer reporting agencies, and others in accordance with applicable law; (2) respond to inquiries from prior or subsequent lenders or holders or loan servicers with respect to my Loan and related documents; and (3) release information and make inquiries to the persons I have listed in my Application as employers and references. My authorization under this Section O applies to this Loan, any future loans that may be offered to me by you, any updates, renewals or extensions of this Loan that may be offered to me, any hardship forbearance of this Loan or any future loans that may be requested by me, and for any review or collection of this Loan or any future loans that may be offered to me. I understand that a credit report is obtained for this loan request. If you agree to make this Loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my Loan, taking collection action on my Loan, or legitimate purposes associated with my Loan. If I live in a community property state, I authorize you to gather credit- related information from others about my spouse. If I ask you, you will tell me if you have requested information about me (or about my spouse if applicable) from a consumer reporting agency and provide me with the name and address of any agency that furnished you with a report.

3. I authorize you and your agents to verify my Social

DocuSign Envelope ID: A9172-349-3B49-4DBE-AFC4A304D0EB5/E

This is a copy view of the Authoritative Copy held by the designated custodian

Security number with the Social Security Administration (SSA) and, if the number on my loan record is incorrect, then I authorize SSA to disclose my correct social security number to these persons.

THIS LOAN AGREEMENT CONTAINS AN ARBITRATION PROVISION: TO THE EXTENT PERMITTED UNDER FEDERAL LAW, YOU AND I AGREE THAT EITHER PARTY MAY ELECT TO ARBITRATE AND REQUIRE THE OTHER PARTY TO ARBITRATE ANY CLAIM UNDER THE FOLLOWING TERMS AND CONDITIONS, WHICH ARE PART OF THIS AGREEMENT. EFFECTIVE AS OF OCTOBER 3, 2016, THIS ARBITRATION AGREEMENT DOES NOT APPLY IF, I AM A MEMBER OF THE ARMED FORCES OR A DEPENDENT OF SUCH MEMBER COVERED BY THE FEDERAL MILITARY LENDING ACT. IF I WOULD LIKE MORE INFORMATION ABOUT WHETHER I AM COVERED BY THE MILITARY LENDING ACT, IN WHICH CASE THIS ARBITRATION AGREEMENT DOES NOT APPLY TO ME, I MAY CONTACT SOFI AT (855) 456-7634.

**P. ARBITRATION AGREEMENT– Please read carefully.** Except as expressly provided below, I agree any claim, dispute or controversy arising out of or related to (a) my Loan, my Application, this Agreement, my acceptance of the Loan, or my Disclosure Statement or (b) any relationship resulting from my Loan, or any activities in connection with my Loan, or (c) the disclosures provided or required to be provided in connection with my Loan (including, without limitation, the Disclosure Statement), or the underwriting, servicing or collection of my Loan, or (d) any insurance or other service related to my Loan, or (e) any other agreement related to my Loan or any such service, or (f) breach of this Agreement or any other such agreement whether based on statute, contract, tort or any other legal theory (collectively, any "Claim") shall be, at my or your election, submitted to and resolved on an individual basis by binding arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA") before the American Arbitration Association ("AAA") under its Consumer Arbitration Rules ("AAA Rules") in effect at the time the arbitration is brought, or before any other party that you and I agree to in writing, provided that such party must not have in place a formal or informal policy that is inconsistent with or purports to override the terms of this Arbitration Agreement. The AAA Rules are available online at www.adr.org. If the AAA cannot serve as administrator and we cannot agree on a replacement, a court with jurisdiction will select the administrator or arbitrator. For purposes of this Section P, the terms "you," "your," and "yours" and "Lender" include the Lender, any other subsequent holder of my Loan, and all of Lender's and their officers, directors, employees, affiliates, subsidiaries, parents, agents, and service providers. These terms also include any party named as a codefendant with you in a Claim asserted by me, such as loan servicers or debt collectors. "Claim" has the broadest possible meaning, and includes initial claims, counterclaims, crossclaims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including claims for injunctive or declaratory relief). However, "Claim" does not include (A) any individual action brought by me in small claims court or my state's equivalent court, unless such action is transferred, removed or

appealed to a different court, or (B) disputes about the validity, enforceability, coverage or scope of this Arbitration Agreement or any part thereof, which are for a court to decide, provided that disputes about the validity or enforceability of the Loan Agreement as a whole are for the arbitrator to decide.

**RIGHT TO REJECT: I may reject this Arbitration Agreement** by mailing a signed rejection notice to **SOFI BANK, N.A.** 2750 East Cottonwood Pkwy, Suite 300, Cottonwood Heights, UT 84121 within sixty (60) days after the first Disbursement Date. Any rejection notice must include my name, address, e-mail address, telephone number and loan or account number.

**IMPORTANT DISCLOSURE AND JURY TRIAL WAIVER:** IF EITHER YOU OR I CHOOSE ARBITRATION, NEITHER PARTY WILL HAVE THE RIGHT TO A JURY TRIAL, TO ENGAGE IN DISCOVERY EXCEPT AS PROVIDED IN THE APPLICABLE ARBITRATION RULES, OR OTHERWISE TO LITIGATE THE DISPUTE OR CLAIM IN ANY COURT (OTHER THAN IN AN ACTION TO ENFORCE THE ARBITRATION AGREEMENT OR THE ARBITRATOR'S AWARD). FURTHER, I WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING EXCEPT FOR ANY APPEAL RIGHT UNDER THE FAA. OTHER RIGHTS THAT YOU OR I WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION.

**CLASS ACTION WAIVER: IF EITHER YOU OR I ELECT TO ARBITRATE A CLAIM, NEITHER YOU NOR I WILL HAVE THE RIGHT TO PARTICIPATE IN A CLASS ACTION, PRIVATE ATTORNEY GENERAL ACTION OR OTHER REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION, EITHER AS A CLASS REPRESENTATIVE OR CLASS MEMBER.** Further, unless both you and I agree otherwise in writing, the arbitrator may not join or consolidate Claims with claims of any other persons. No arbitrator shall have authority to conduct any arbitration in violation of this provision or to issue any relief that applies to any person or entity except you and me individually.

PROCEDURES: If I reside in the U.S., any arbitration hearing shall take place within the federal judicial district in which I reside. If I reside outside the United States, I agree that any arbitration hearing shall take place in San Francisco, California. Each party will bear the expense of its own attorneys, experts and witnesses, regardless of which party prevails, unless applicable law or this Agreement gives a right to recover any of those fees from the other party. If my Claim is for $10,000 or less, you agree that I may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing or by an in-person hearing as established by the AAA Rules. If my Claim exceeds $10,000, the right to a hearing will be determined by the AAA Rules. All fees and expenses of the arbitrator and administrative fees and expenses of the arbitration shall be paid by the parties as provided by the AAA Rules governing the proceeding, or by specific ruling by the arbitrator or by agreement of the parties. The arbitrator shall have the authority to award in favor of the individual party seeking relief all remedies permitted by applicable substantive law, including, without limitation,

DocuSign Envelope ID: ...

This is a true and authoritative Copy as viewed and authorized by the designated custodian

compensatory, statutory and punitive damages (subject to constitutional limits that would apply in court), and attorneys' fees and costs. In addition, the arbitrator may award declaratory or injunctive relief but only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted in that party's individual Claim. Upon the timely request of either party, the arbitrator shall write a brief explanation of the basis of his or her award. Any court with jurisdiction may enter judgment upon the arbitrator's award. If the arbitrator determines that any claim or defense is frivolous or wrongfully intended to oppress the other party, the arbitrator may award sanctions in the form of fees and expenses reasonably incurred by the other party (including arbitration administration fees, arbitrator's fees, and attorney, expert and witness fees), to the extent such fees and expenses could be imposed under Rule 11 of the Federal Rules of Civil Procedure. No arbitration award involving the parties will have any preclusive effect as to issues or claims in any dispute involving anyone who is not a party to the arbitration, nor will an arbitration award in prior disputes involving other parties have preclusive effect in an arbitration between the parties to this Arbitration Agreement.

NON-WAIVER: Even if all parties have opted to litigate a Claim in court, you or I may elect arbitration with respect to any Claim made by a new party or any Claim later asserted by a party in that or any related or unrelated lawsuit (including a Claim initially asserted on an individual basis but modified to be asserted on a class, representative or multi-party basis). Nothing in that litigation shall constitute a waiver of any rights under this Arbitration Agreement. For example, if you file a lawsuit against me in court to recover amounts due under the Loan Agreement, I have the right to request arbitration, but if I do not elect to request arbitration, you reserve and do not waive the right to request arbitration of any Claim (including any counterclaim) I later assert against you in that or any related or unrelated lawsuit. This Arbitration Agreement will apply to all Claims, even if the facts and circumstances giving rise to the Claims existed before the effective date of this Arbitration Agreement.

GOVERNING LAW: This Arbitration Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA, and not by any state law concerning arbitration. If I have a question about the AAA, I can contact them as follows: American Arbitration Association, 120 Broadway Floor 21, New York, N.Y. 10271, 212-716-5800, www.adr.org.

SURVIVAL, SEVERABILITY: This Arbitration Agreement shall survive full payment of the Loan, your sale or transfer of the Loan, any bankruptcy or insolvency, any forbearance or modification granted pursuant to this Agreement, any cancellation or request for cancellation of the Agreement or any disbursements under the Agreement. If any part or parts of this Arbitration Agreement are found to be invalid or unenforceable by a decision of a tribunal of competent jurisdiction, then such specific part or parts shall be of no force and effect and shall be severed, but the remainder of this Arbitration Agreement shall continue in full force and effect, except that: (A) If a determination is made in a proceeding involving you and me that the Class Action Waiver is invalid or unenforceable, only this sentence of this Arbitration Agreement will remain in force and the remainder of this Arbitration Agreement shall be null and void, provided that the determination concerning the Class

Action Waiver shall be subject to appeal, and (B) If a Claim is brought seeking public injunctive relief and a court determines that the restrictions in this Arbitration Agreement prohibiting the arbitrator from awarding relief on behalf of third parties are unenforceable with respect to such Claim (and that determination becomes final after all appeals have been exhausted), the Claim for public injunctive relief will be determined in court and any individual Claims seeking monetary relief will be arbitrated. In such a case the parties will request that the court stay the Claim for public injunctive relief until the arbitration award pertaining to individual relief has been entered in court. In no event will a Claim for public injunctive relief be arbitrated.

**Q. DISCLOSURE NOTICES**

NOTICE TO CONSUMER. (For purposes of the following notice, the word "you" refers to the Borrower not the Lender) 1. DO NOT SIGN THE APPLICATION BEFORE YOU READ THIS AGREEMENT. 2. YOU ARE ENTITLED TO A COPY OF THIS DOCUMENT. 3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY AND MAY BE ENTITLED TO A REFUND OF UNEARNED CHARGES IN ACCORDANCE WITH LAW.

**Notice to Borrowers Regarding Loan Sales**

I understand that you may sell, transfer or assign my Agreement without my consent. Should ownership of my Loan be transferred, I will be notified of the name, address, and telephone number of the new lender if the address to which I must make payments changes. Sale or transfer of my Loan does not affect my rights and responsibilities under this Agreement. I understand that acting in the capacity of a non-fiduciary agent to me, you will maintain a register to record the entitlement to payments of principal and interest on my Agreement and that beneficial ownership of such payments under my Agreement as reflected in the register will be conclusive notwithstanding notice to the contrary. You will notify me of a change in ownership reflected in the register if (1) this alters the address to which I must make payments or (2) upon my reasonable written request. Sale, assignment or transfer of my Agreement or beneficial interest in payments of principal and interest on my Agreement does not affect my rights and responsibilities under this Agreement.

**CUSTOMER IDENTIFICATION POLICY NOTICE**

To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify and record information that identifies each person (individuals and businesses) who opens an account. What this means for you: (For purposes of the following notice, the word "you" refers to the Borrower not the Lender) **When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

**State Notices** – I understand that the following notices are or may be required by state law and that these notices may not describe all of the rights that I have under state and federal law. Unless otherwise indicated, each notice applies or may apply to borrowers and any Co-Borrower/Joint Applicant who live in the indicated state on the dates that they signed their Applications and to borrowers and any Co-Borrower/Joint Applicant who are residents of that state.

DocuSign Envelope ID: ... This is a copy view of the Authoritative Copy held by the designated custodian

FOR ALABAMA RESIDENTS: (For purposes of the following notice, the word "you" refers to the Borrower not the Lender) CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

CALIFORNIA AND UTAH RESIDENTS: As required by California and Utah law, I am notified that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency if I fail to fulfill my credit obligation terms.

CALIFORNIA RESIDENTS: I have the right to prohibit the use of information contained in my credit file in connection with transactions not initiated by me. I may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If you take any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, I have the right to obtain within sixty (60) days a free copy of my consumer credit report from the consumer reporting agency which furnished you my consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. I have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

CALIFORNIA RESIDENTS: By signing this Agreement, I certify that I have not paid any loan broker or other person any fee to obtain this loan from Lender.

IOWA RESIDENTS: If my Final Loan Amount is $20,000 or more, then the following notice applies: IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. YOU OR I MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.

IOWA RESIDENTS: NOTICE TO CONSUMER (For purposes of the following notice, the word "you" refers to the Borrower not the Lender) 1. Do not sign this paper before you read it. 2. You are entitled to a copy of this paper. 3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.

MARYLAND RESIDENTS: You and I have agreed that this Credit Agreement is governed by federal law and the laws of Utah without regard to conflict of laws rules; if any court should nevertheless determine that this Agreement is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, You and I agree and elect that this Agreement is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 123 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law including without limitation, 12 U.S.C. § 1831d.

INDIANA AND MAINE RESIDENTS: The provisions of this Loan Agreement regarding the payment of collection agency

costs and court costs and where lawsuits must be filed do not apply to Maine and Indiana residents.

KANSAS RESIDENTS: NOTICE TO CONSUMER: 1. Do not sign this agreement before you read it. 2. You are entitled to a copy of this agreement. 3. You may prepay the unpaid balance at any time without penalty.

KANSAS RESIDENTS: You and I agree that this Agreement is subject to the provisions of K.S.A 16a-1-101 through 16a-9-102 applying to consumer credit transactions.

MASSACHUSETTS RESIDENTS: Massachusetts law prohibits discrimination based upon marital status or sexual orientation.

MISSOURI RESIDENTS: (For purposes of the following notice, the word "you" refers to the Borrower not the Lender). Oral or unexecuted agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including agreements to extend or renew such debt are not enforceable. To protect you (borrowers) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

MAINE, NEW YORK, RHODE ISLAND AND VERMONT RESIDENTS: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this Loan. If I request (1) I will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, I will be informed of the names and addresses of the credit bureaus that furnished the reports. If you agree to make this Loan to me, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which I have applied, reviewing my Loan, taking collection action on my Loan, or legitimate purposes associated with my Loan.

NEBRASKA RESIDENTS: (For purposes of the following notice, "you" refers to the Borrower not the Lender). Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including agreements promise to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

NEW HAMPSHIRE RESIDENTS: If you refer this Loan Agreement to an attorney for collection, I agree to pay your reasonable attorneys' fees. However, if I prevail in (1) any action, suit, or proceeding you bring, or (2) an action brought by me in connection with this Loan Agreement, reasonable attorneys' fees shall be paid to me. If I successfully assert a partial defense or setoff, recoupment, or counterclaim to an action brought by you, the court may withhold from you the entire amount or such portion of the attorneys' fees as the court considers equitable.

NEW JERSEY RESIDENTS: The section headings of this Agreement are a table of contents and not contract terms.

DocuSign Envelope ID: ...

This is a copy view of the Authoritative Copy held by the designated custodian

Portions of this Agreement with references to actions taken to the extent of applicable law apply to acts or practices that New Jersey law permits or requires. In this Agreement, acts or practices (i) by you which are or may be permitted by "applicable law" are permitted by New Jersey law, and (ii) that may or will be taken by you unless prohibited by "applicable law" are permitted by New Jersey law.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

UTAH RESIDENTS: This Agreement is the final expression of the agreement between me and you and it may not be contradicted by evidence of an alleged oral agreement.

Married WISCONSIN RESIDENTS: My signature on my Application confirms that this loan obligation is being incurred in the interest of my marriage or family. No provision of any marital property agreement (pre-marital agreement), unilateral statement under Section 766.59, Wisconsin Statutes, or court decree under Section 766.70, Wisconsin Statutes, adversely affects the interest of the Lender unless the Lender, prior to the time that the loan is approved, is furnished with a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the Lender is incurred. My spouse has actual knowledge that this credit is being extended to me.

**By signing on the following signature page, I acknowledge my receipt of and my acceptance to the terms of this Agreement.**



DocuSign Envelope ID: ... This is a copy viewing the Authoritative Copy by the designated custodian

## Signature Page

By signing below, I acknowledge that I have received and read the Disclosure Statement and Loan Agreement applicable to this Loan and that I accept all of the terms and conditions of the Loan
I declare that the information provided in connection with my application for this Loan is true and complete to the best of my knowledge and belief. I have read this Loan Agreement and agree to the terms therein. I understand and agree that **SOFI BANK, N.A.** may obtain a consumer credit report in connection with this application and in connection with any updates, renewals or extensions of any credit as a result of this application.

**Agreement to pay: I agree to pay the lender or any other holder of this Loan all sums disbursed under the terms of this Loan Agreement, any loan origination fee, plus interest and all other fees, charges, and costs that may become due. The terms and conditions set forth in the Loan Agreement constitute the entire agreement between us.**

CAUTION – IT IS IMPORTANT TO THOROUGHLY READ THE CONTRACT BEFORE SIGNING IT.

NOTICES TO CUSTOMER
(For purposes of the following notice, the word "you" refers to the Borrower not the Lender) (a) DO NOT SIGN THIS BEFORE YOU READ THE LOAN AGREEMENT EVEN IF OTHERWISE ADVISED. (b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES. (c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE TO THE EXTENT REQUIRED BY APPLICABLE LAW.

BORROWER SIGNATURE :  *Jonathan Soave*
DocuSigned by:
CFAEF1D2DCB142A...

SIGNATURE DATE : 7/5/2022

PRINT FULL NAME : Jonathan Soave

I agree to keep a copy of this Loan Agreement and a copy of the Disclosure Statement for my own future reference.

DocuSign Envelope ID: ...

This is a copy view of the authoritative Copy held by the designated custodian

# SoFi Bank, N.A.
## Your Credit Score and the Price You Pay for Credit

| Your Credit Score | | |
|---|---|---|
| **Your credit score** | 716 | |
| | Source: **Experian** | Date: **07/01/2022** |



| Understanding Your Credit Score | |
|---|---|
| **What you should know about credit scores** | Your credit score is a number that reflects the information in your credit report. |
| | Your credit report is a record of your credit history. It includes information about whether you pay your bills on time and how much you owe to creditors. |
| | Your credit score can change, depending on how your credit history changes. |
| **How we use your credit score** | Your credit score can affect whether you can get a loan and how much you will have to pay for that loan. |
| **The range of scores** | Scores range from a low of **316** to a high of **850**. |
| | Generally, the higher your score, the more likely you are to be offered better credit terms. |
| **How your score compares to the scores of other consumers** | FICO                          experian. |

This is a copy view of the Authoritative Copy held by the designated custodian

## Checking Your Credit Report

| | |
|---|---|
| **What if there are mistakes in your credit report?** | You have a right to dispute any inaccurate information in your credit report. If you find mistakes on your credit report, contact the consumer reporting agency.<br><br>It is a good idea to check your credit report to make sure the information it contains is accurate. |
| **How can you obtain a copy of your credit report?** | Under federal law, you have the right to obtain a free copy of your credit report from each of the nationwide consumer reporting agencies once a year.<br><br>To order your free annual credit report-<br><br>*By telephone:*   Call toll-free: 1-877-322-8228<br><br>*On the web:*   Visit www.annualcreditreport.com<br><br>*By mail:*   Mail your completed Annual Credit Report Request Form (which you can obtain from the Federal Trade Commission's web site at https://www.consumer.ftc.gov/articles/pdf-0093-annual-report-request-form.pdf) to:<br><br>Annual Credit Report Request Service<br>P.O. Box 105281<br>Atlanta, GA 30348-5281 |
| **How can you get more information?** | For more information about credit reports and your rights under Federal law, visit the Consumer Financial Protection Bureau's Web site at www.consumerfinance.gov/learnmore. |

DocuSign Envelope ID: 532FC948-B48N-4D4E-AFC4-A084DDEB37F

This is a copy view of the Authoritative Copy held by the designated custodian



2750 East Cottonwood Pkwy, Suite 300 Cottonwood Heights, UT 84121.
Toll Free 855-456-SOFI (7634)

**Automatic Payment Authorization Form** – You have the option to pay your loan each month using our Auto Payment option which will electronically debit payments from your bank account. If you decide to use Auto Payments you must agree to the terms of this agreement. This agreement can only be used for Auto Payments from a bank deposit account of the borrower. If you chose the Auto Payment option, you will be entitled to have the interest rate on your loan reduced by .25% APR reduction for all payments made using the Auto Payment feature.

By signing below, I authorize SoFi Bank, N.A. ("SoFi") to initiate monthly deductions from my checking or savings account below in the amount equal to the sum of my monthly scheduled loan payment, plus, if applicable, any additional amounts set forth below, and any late fees or other amounts owed under the terms of my loan agreement.

I understand and acknowledge that:
- SoFi will begin to deduct monthly payments from my account on the first payment due date after this authorization form has been approved by SoFi.
- This agreement is not assignable by me, however SoFi may, at any time, transfer this agreement and my authorization to a successor servicer or any other entity which may purchase my loan.
- This authorization will remain in effect until terminated by SoFi or by me either verbally by calling 855-456-7634 or in writing via Chat, by clicking HERE.
- In the event, I terminate this agreement, I understand that SoFi may require up to 10 business days to process any termination or other adjustment I make to my Auto Payment instructions. I understand that I can stop any specific unauthorized electronic fund transfer by providing oral or written notice to SoFi or my financial institution at least 3 days before the scheduled date of the preauthorized electronic funds transfer.



| | | Authorization is for which account type? |
|---|---|---|
| Name | JONATHAN SOAVE | ☒ Checking Account |
| Address | 3500 Emerson Ave S 306 Minneapolis, MN 55408-3060 | ☐ Savings Account |
| Home Phone | | **Faster Repayment Option:** |
| Email Address | | I would like to pay more than my scheduled monthly payment amount. |
| Financial Institution Routing Number | | Please deduct an additional: |
| Financial Institution Account Number | | Each month in addition to my scheduled payment and apply it to my loan account |

See the sample check (below) for help locating the routing number and your account number.

This is a copy view of the Authoritative Copy held by the designated custodian

```
                                                    DATE _____    999

PAY TO THE
ORDER OF _____  $ _____
_____ DOLLARS

FOR _____        _____

  ":9999999999"   9999999"  9999
   Routing Number    Account Number
```

**Routing Number**--The routing number is a nine-digit number that identifies your financial institution.  It is usually between the characters specified below, however the placement, may vary. Some routing numbers are in the middle, instead of being on the left side of the check.

**Account Number**-- The number of digits in your account number may vary. It is usually located to the right of the routing number. This check number may sometimes follow the account number, but is not part of the account number.  By signing below, I acknowledge that I have read, understand and agree to be bound by all of the terms and conditions of this Agreement, including without limitation, the provisions of the *Disclosure Statement for Recurring Automatic Payments* below.

*Your signature is required to draw funds from your account*

Borrower Signature:  Jonathan Soave
—DocuSigned by:
CFAEF1D2DCB142A...

7/5/2022          Sofi Account Number    18236366

## Disclosure Statement for Recurring Auto Payments

1)  **The Type and Nature of Automatic Payment**
    Each Auto Payment will be effective on the due date of your loan payment. The payment amount will be equal to  (a) your monthly loan payment (based on the applicable repayment schedule), plus (b) any additional amounts you've authorized  above to be deducted and applied to your account, plus (c) any late fees or other amounts owed on your account pursuant to your loan agreement to the extent permissible  under  applicable law.

2)  **In Case of Errors and Questions About Your Automatic Payments**
    You understand that you have certain rights under the Electronic Funds Transfer Act and its implementing regulation (Regulation E) with respect to unauthorized Auto Payments and the resolution of errors related to Auto Payments. If you suspect an error in any Auto Payment transaction, you must contact your financial institution to preserve those rights. This will not negate your responsibility to make scheduled payments on your loan during the investigation by your financial institution.

3)  **Right to Terminate Auto Payments, Insufficient Funds.**
    SoFi or you may terminate this Agreement with or without cause. It may take SoFi up to 10 business days to process any request to terminate this agreement.  Please note that SoFi reserves the right to terminate this Agreement if it receives two consecutive insufficient funds return. SoFi is also authorized under this Agreement to collect by Auto Payment any additional fees due under your loan agreement, as well as fees charged by SoFi resulting from insufficient funds, to the extent permitted by law. You may also be charged a return fee by your financial institution if sufficient funds are not available at the time of an Auto Payment. In addition to fees and possible termination of the Auto Payment feature, your loan will not receive the benefit of the .25% APR reduction on your interest rate for any Auto Payment which was not honored by your financial institution or any payment made by check, wire or other means other than by Auto Payment. You may stop any specific preauthorized electronic fund transfer by providing timely notice to SoFi either verbally by calling 855-456-7634 or in writing via Chat, by clicking HERE.  Please note that SoFi must receive your verbal or written request at least 3 business days before the scheduled date of the preauthorized electronic fund transfer.  You are responsible for making timely monthly payments on your loan(s) after you have terminated Auto Payments.  Termination of this Agreement will result in the loss of any interest rate discount offered while participating in the Auto Payment program and the amount of your monthly payments will increase. After any termination of this Agreement, you may reapply for Auto Pay the next month.

This is a copy view of the Authoritative Copy held by the designated custodian
DocuSign Envelope ID: D51FC548-3B49-4D4E-AFC4-A36470DEB37E

4) **Assignment, Changes.**
   This Agreement is not assignable by you, however SoFi may, at any time, transfer this Agreement and your authorization to a successor servicer or other entity which may purchase your loan. In addition, SoFi may assign or sell its rights and obligations under this Agreement to a third party at any time, by executing this agreement, you will be deemed to have consented to any such sale or assignment by SoFi of its rights and obligations hereunder to any third party.
   If Sofi initiates a change to your monthly loan payment amount, the new payment amount and any additional amount you previously requested to be deducted via Auto Payment, will continue to be deducted from your account. You have the right to receive notice at least 10 days in advance of any change to your Auto Payment amount. If you wish to change the monthly additional amount withdrawn or make other changes to your Auto Payment directions , you will be required to submit a new Auto Payment Authorization Agreement to SoFi which will take up to 10 business days to process.

5) **Resuming Automatic Payments After Deferment, Forbearance or Grace Period**
   If you are granted a forbearance or deferment on your loan after this Agreement is effective, the forbearance or deferment will not automatically terminate this Agreement, and Auto Payments under this Agreement will resume with the first payment due following the deferment, forbearance or grace period, unless you suspend Auto Payments or terminate this Agreement as described above. Any interest rate reduction from Auto Payments will not apply to interest accrued during any forbearance, deferment, or grace periods in which you do not make Auto Payments. Automatic Payments will resume at the end of your deferment, forbearance or grace period.

6) **Confidentiality/Privacy**
   SoFi may disclose information to third parties regarding your bank account, your loan account and/or Auto Payments to the extent permitted by law, including but not limited to, the following circumstances:
   a) When necessary to complete an Automatic Payment;
   b) To verify the existence and condition of your account for a credit bureau or merchant;
   c) To comply with government agency requests, subpoenas, or orders, lawful discovery under federal or state rules of civil and criminal procedure, court orders, or as otherwise required by applicable law; or
   d) If you give SoFi written permission to do so.

7) **Other Agreements and Regulations**
   SoFi reserves the right, upon notice to you, to make changes to the Auto Payment feature as required to comply with changes to any state or federal laws rules or regulations applicable to debits to accounts.

8) **Business Days**
   For purposes of this Agreement, business days are Monday through Friday, excluding bank holidays.

9) **Auto Pay Statements**
   You will continue to receive a monthly account statement, via email, from SoFi which reflects your Auto Payments.

10) **Interest Rate Reduction**
    Your loan will be entitled to a .25% APR reduction on your loan interest rate for all payments made through Auto Payments. If you enroll in Auto Payment during the loan application process, the reduction will apply effective the date the repayment schedule is created. If this Agreement is terminated, or Auto Pay is terminated, suspended, returned for insufficient funds, or if you default on loans enrolled in Auto Pay, you will lose the interest rate reduction for all payments not made using Auto Payment. As noted above, you will also lose the interest rate reduction during any deferment, forbearance or grace periods.

10) **Definitions**
    a) Loan means each loan issued by SoFi to Borrower under the Account Number listed on this Agreement.
    b) Bank Account means the deposit account of Borrower identified on the first page of this Agreement.
    c) Borrower means the individual identified on the first page of this Agreement and on the signature page hereof, who is also referred to in this Agreement as "you" and with terms "your" and "yours."
    d) SoFi shall include any purchaser of your loan, any successor servicer any agent retained by SoFi to conduct Auto Payments under this Agreement.

Exhibit B

THIS DOCUMENT HAS A COLORED BACKGROUND AND MICROPRINTING. THE REVERSE SIDE INCLUDES AN ARTIFICIAL WATERMARK.

Payable through:

Jonathan Soave
Done In Good Faith
c/o 1903 SW 18th St
Boynton Beach, Florida [33426]

# CERTIFIED FUNDS

Remit at Par

UST

1500 PENNSYLVANIA
AVENUE N.W.
WASHINGTON, D.C. 20220

15-51
000

No. 982306001

Date: 06/07/2023

Pay to
the Order of: SoFi Bank, N.A.

$ 60,000.00

Sixty Thousand ************************************************************************************** Dollars

Memo:  Account #. PA-954349

_Jonathan Soave_

Authorized Representative for the Beneficiary
Exemption 470515120

Reference: Prepaid personal item; exchange acknowledgment,
This draft is an offer of tender and discharges the obligation per U.C.C. §§ 1-103, 1-104, 3-603(a)(b), HJR 192 of June 5, 1933.& Public Law 73-10

⑆982306001⑆   ⑇520907065⑇   470515120⑈

Fiduciary Collector:

## MEMORANDUM

### ***** This Note MUST be Processed/Deposited as a Negotiable Instrument *****

This Note is a Secured Transferable Negotiable Instrument meeting all requirements of U.C.C.- Article 3, as a Money Order. This Note, credit agreements, bills of exchange and checks are defined as legal tender, or money, by the statutes such as 12 USC 1813(l)(1), U.C.C. §1-201(24), §3-104, §8-102(9), §9-102(9), (11), (12) b, (49), (64).

Post the uncollected funds into the asset column of this account and charge the offer and acceptance for settlement; prepaid and exempt when entered in the post-closing Balance.

This statement constitutes Maker's order to pay this instrument upon presentment and endorsement, As an operation of law, Payee tacitly consents and agrees that there is accord and satisfaction by use of this instrument to satisfy Payee's claim and Maker is hereby discharged from liability on this alleged account and the obligation is suspended in accordance with law as codified at U.C.C. §§ 3-310{b}, 3-311, 3-603, HJR 192 of June 5, 1933.& Public Law 73-10

Maker does not waive timeliness. However, if Payee needs additional time, Payee must present Maker with a written request for additional time within a reasonable time, setting forth the reason Payee requests an extension of time, with good cause shown. The acceptability of any such request received by Maker from Payee is conditional upon approval by Maker.

### § 3-311. ACCORD AND SATISFACTION BY USE OF INSTRUMENT.

This instrument is tendered as full satisfaction of the claim. In the event this instrument is not presented for payment within a reasonable period of time, and there has been no request for an extension of time with good cause shown, Payee tacitly consents and agrees that Maker has satisfied/discharged the debt claim re. this alleged account.  Payee tacitly consents and agrees that Payee has a duty to prevent this debt claim/monetary obligation from damaging Maker in any way, and that Payee confesses judgment and Maker reserves the right to initiate a counterclaim against Payee, and file a claim against the bond any responsible party, including Payee and all principals, agents, and assignee of Payee, whose acts/omissions result in tort damages against Maker.

### Should This Note be dishonored and/or not be honored, this letter is further presentment and serving as a NOTICE OF DISHONOR in accord with U.C.C.- Article 3, §3-503: "NOTICE OF DISHONOR"

For questions regarding this draft, contact maker by written correspondence:

Jonathan Soave c/o 1903 SW 18th St Boynton Beach, Florida [33426]

Void where prohibited by Law

Exhibit C

Certified Mail Return Receipt Number: 9589 0710 5270 0612 6562 72

From:   **Jonathan: Soave, Agent/Beneficiary**
        c/o 1903 SW 18th St
        Boynton Beach, Florida [33426]

To:     **SOFI BANK, N.A.**
        **FOR SPECIAL HANDLING**
        Attn: Legal Dept and Head CPA
        2750 East Cottonwood Pkwy, Suite 300
        Cottonwood Heights, UT 84121

# AFFIDAVIT OF TRUTH
# AND PROOF OF CLAIM

Notice To Agent Is Notice To Principal
Notice To Principal Is Notice To Agent

Date: June 7th, 2023

Ref: Account number **PA-954349**

To Whom it may concern in the Legal Department and Head CPA only,

I, **Jonathan: Soave, Agent/Beneficiary**, hereinafter **"Affiant"**, am in receipt of an account payoff statement from **SOFI BANK** for an alleged debt owed to your company. It is my wish to remain in honor and clear any controversy as soon as possible, therefore I propose two different solutions to settle any potential disputes on this matter, as outlined below:

**Option A - Settlement via negotiable instrument:**

1.   **SOFI BANK** to accept enclosed negotiable instrument as full payment and settlement of the account after **SOFI BANK** has calculated a final payoff, per your company's policy;

2.   **SOFI BANK** to accept a $5,000 (Five Thousand U.S. Dollars) gift, to be deducted from same enclosed negotiable instrument, and correct any and all derogatory reporting on **Affiant's** consumer credit report and to reflect a status of "current" and/or "paid on time" for consumer's account;

3.   **SOFI BANK** to refund **Affiant** via check clearable through the United States banking system for any unused amount remaining from enclosed negotiable instrument after **SOFI BANK's** final accounting and settlement of consumer's account, mailed to the address provided on this affidavit.

**Option B - Refusal of settlement via negotiable instrument (expressed or implied):**

1.   Negotiable Instruments are a legal form of payment under Public Law 73-10 / HJR 192 and USC and UCC codes. Stating the method in which the consumer can and cannot pay is offering legal advice. Not accepting a negotiable instrument is in violation of: UCC 3-109, UCC 3-108, UCC 3-104, UCC 3-110, UCC 3-603, UCC 3-310, UCC 3-311, UCC 3-503, UCC 1-103, UCC 1-104, UCC 1-201, UCC 8-102, UCC 9-102, 12 USC 1813, 18 USC 1951, Public Law 73-10 and HJR 192 of 1933. These violations are subject to fines under their respective codes and may incur additional billing per enclosed Fee Schedule;

2.   **Affiant** requests that **SOFI BANK** validates the alleged debt pursuant to 15 USC 1692g, via a <u>sworn statement</u>, Should **SOFI BANK** fail to validate alleged debt within the

allowed time period or according to statute above, it shall lose any right of claim over said alleged debt and be held liable under 18 USC 1001 for false, fictitious, or fraudulent statements. Additional billing may be incurred per enclosed Fee Schedule;

3. Pursuant to 12 USC 5562(c)(10) - Production of Document Material:
   **Affiant** is aware the consumer has the right to request the money audit trail. Affiant requests this documentary material via a **sworn statement**, in accordance with 12 USC 5562(c)(10) to address this subject matter. Without this documentary evidence, there is no evidence of this alleged debt;

4. Pursuant to 12 USC 1831n(2)(a) - GAAP Audit Trail, Accounting and Insurance:
   **Affiant** requests **SOFI BANK** to provide the GAAP Audit Trail in accordance with 12 USC 1831n(2)(a). Without this documentary evidence to properly address this subject matter it is impossible to determine what is actually owed. Corporations participate in the trading of Securities through the U.S. Securities and Exchange Commission, in which the method of payment is presented through the negotiable instrument or note. Failure to provide may be presented as non-disclosure in an Article 3 court and may incur additional billing per enclosed Fee Schedule;

5. **Affiant** requests **SOFI BANK** to provide authenticated records of all IRS filings (including all forms 1099 and 1096) since opening of this account. Subsequent FOIA requests evidencing failure to provide requested records may be presented as non-disclosure in an Article 3 court and may incur additional billing per enclosed Fee Schedule;

6. **Affiant** requests **SOFI BANK** to provide record of all trades and/or investments, and/or interests associated with this account consumer is alleged to be a party of. Consumer has a right to this information, as it is directly associated with the reporting activities associated with consumer's financial record;

7. **Affiant** requests the **original** contract signed between both the alleged debtor and **SOFI BANK**. Failure to provide a contract with a wet ink signature proves that the consumer and **SOFI BANK** are not bound by any contractual obligation. In the event **SOFI BANK** cannot produce a contract for which it has signed with consumer and instead, can only produce a contract for which the consumer alone has signed, it shall constitute an unilateral contract in which the consumer has total control of and may rescind and/or amend per consumer's wishes;

8. **Affiant** requests proof that no securities have been taken or traded from the opening of the account to the present day, via the social security number that **SOFI BANK** holds on the account. Failure to provide this request will constitute trust fraud has been committed by **SOFI BANK** and will be held liable in an Article 3 court and may incur billing per enclosed Fee Schedule;

9. **Affiant** requests that SOFI BANK proves that consumer is **not** authorized by law to pay via coupon method/negotiable instrument per the UCC, Public Law 73-10, and HJR 192 of 1933. Failure to provide proof otherwise shows an admission of truth and the failure to accept on part of **SOFI BANK**, in which **SOFI BANK** shall assume liability and may incur additional billing per enclosed Fee Schedule;

10. **Affiant** requests that **SOFI BANK** proves with extensive detail that by: a) reporting to consumer credit agencies negatively; b) showing a fraudulent alleged balance, and; c) not accepting payment, is negligence and fraud, and that the consumer does not have the right to hold **SOFI BANK** accountable for damages;

11. Pursuant to UCC 3-603(b) "If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is

discharge, to the extent of the amount of the tender...". **Affiant** requests that **SOFI BANK** proves in extensive detail that the UCC does not apply to its commercial dealings and that the negotiable instrument provided does not meet the criteria for payment per commercial law.

As mentioned in the introduction of this affidavit, it is my wish to remain in honor and to avoid any potential controversy and to have this matter settled as expeditiously as possible. With that in mind, I am offering you "Option A" as my best effort to achieve that result. Should you decline "Option A", either expressly in writing or implied through your silence/acquiescence and/or failing to meet the allowed time period, "Option B" will be defaulted and automatically selected for **SOFI BANK**. Upon default of "Option B" **SOFI BANK** agrees to pay any and all arbitration, court and legal costs necessary to settle such dispute.

**SOFI BANK** and any of its other agents, affiliates, subsidiaries, assignees, etc, may **not** contact me by any means other than <u>written correspondence via U.S. Mail</u>. Further, **SOFI BANK** may **not** sell or reassign this alleged debt to a third party debt collection agency while **Affiant** is seeking resolution of this matter under this affidavit. Failure to comply may result in billing.

This is an Affidavit of Truth provided by **Jonathan: Soave, Agent/Beneficiary** and it is understood by **SOFI BANK** that an Affidavit of Truth is unrebutted holds true in any court of law. Failure to respond with all requests within 30 days of the date of this letter will prove that **SOFI BANK** is unable to rebut the facts stated. Should **SOFI BANK** need additional time to respond it shall request **Affiant** in writing prior to the 30 day period and the consumer must suffer no repercussions by **SOFI BANK** during the period of discovery or it is understood that **SOFI BANK** will be held liable for additional damages whether personal or financial in nature.

FLORIDA STATE NOTARIAL CERTIFICATE ACKNOWLEDGEMENT

Florida State, _Broward_ County ss.

Affirmed before me this _7th_ day of _June_, 2023,

by _Jonathan: Soave, agent/beneficiary_
by: Jonathan: Soave, Agent/Beneficiary — Sui Juris, Without Prejudice, UCC 1-308

Type and # of ID _USA Passport # 661634586_

_____
Signature of Notary Public

_Antonio Marquez_
Name of Notary Public, Florida State

Seal:

ANTONIO MARQUEZ
Notary Public · State of Florida
Commission # GG 953323
My Comm. Expires Jan 30, 2024

Enclosed:     Fee Schedule, Power of Attorney,
              _NEGOTIABLE INSTRUMENT No. 982306001_

# Fee Schedule
## Lawful Legal Notice
Notice To Principal Is Notice To Agent
Notice To Agent Is Notice To Principal

**This lawful legal notice is on file with your State Attorney General and County Recorder**

| Prohibited Action | Associated Fee |
|---|---|
| Violation of a constitutionally protected right | $250,000.00 per occurrence |
| Violation of right to travel in private capacity | $25,000.00 per minute |
| Violation of title 18 USC 113, Assault | $500,000.00 per occurrence |
| Violation of title 18 USC 1001, using false, fictitious, fraudulent language | $150,000.00 per occurrence |
| Violations of title 18 USC section 242, deprivation of rights under color of law | $150,000.00 per occurrence |
| Violation of title 18 USC section 241, conspiracy against rights | $150,000.00 per occurrence |
| Reversing provisional credit | $50,000 per occurrence |
| Closing an account without permission | $1,000,000.00 per account |
| Refusing a negotiable instrument | face value of instrument + $10,000.00 per occurrence |
| Violation of UCC 3-307, breach of fiduciary duty | $25,000.00 per day |
| Violation of any USC resulting in loss, harm or injury | $150,000.00 per occurrence |
| Violation of any UCC resulting in loss, harm or injury | $150,000.00 per occurrence |
| Violation of international law resulting in loss, harm or injury | $250,000.00 per occurrence |
| Trespass | $100,000.00 per occurrence |
| Detainment or arrest | $250,000.00 per occurrence + $25,000.00 per day or fraction thereof |
| Damage to personal property (real, personal, intellectual, biological or negotiable) | 3x item's value + $30,000.00 per item |
| Making claims to or seizure of personal property (real, personal, intellectual, biological or negotiable) | 3x item's value + $30,000.00 per item |
| Death as a result of or during detainment | $150,000,000.00 payable to each surviving immediate family member |
| Seizure of electronic devices | 5x item's value + $25,000.00 per item per day or fraction thereof |

**This is a self-executing contract.** The commission of any PROHIBITED ACTION or knowingly failing to act to prevent the commission of any PROHIBITED ACTION represents agreement to the terms and fees of this document in its entirety. All person(s), principal(s), agent(s), foundation(s), association(s), member(s) and entity(s) committing, conspiring to commit, or failing to act to prevent the commission of one or more PROHIBITED ACTIONS do accept and agree to pay the associated fee(s) for commission of such PROHIBITED ACTION(S). Fees are collectable immediately upon demand through payment in lawful money, lien, levy, garnishment, servitude and seizure. The fees, damages and value(s) are set at the best appropriate value in the sole determination of the author / presenter / server of this document. The author / presenter / server of this document reserves the right to waive or modify the fee amount(s) at any time without notice. This document is NOT negotiable NOR rebuttable, the only way to avoid immediate execution of this document is to NOT violate, permit violation or conspire to violate any part of it.

Author/ presenter / server mark:

Name: _Jonathan: Soave, agent/beneficiary_

:Jonathan: Soave — Sui Juris, Without Prejudice, UCC 1-308

Address: _c/o 1908 SW 18th St Boynton Beach, Florida_

Date: _06/07/23_

Florida State
County of _Broward_ ___ ss. (Town/City) _Deerfield Beach_

Subscribed and sworn before me this _7th_ day of _June_ 20_23_

_[signature]_
Signature of Notary Public

My commission expires _Jan 30, 2024_

_[signature]_
Printed name of Notary Public

ANTONIO MARQUEZ
Notary Public - State of Florida
Commission # GG 953323
My Comm. Expires Jan 30, 2024

Exhibit D

From: **Jonathan: Soave, Agent/Beneficiary**
c/o 1903 SW 18th St
Boynton Beach, Florida [33426]

To:   **SOFI BANK, N.A.**
Attn: Christopher Lapointe, CFO
2750 East Cottonwood Pkwy
Cottonwood Heights, UT 84121



# AFFIDAVIT
## IRREVOCABLE ESTOPPEL BY ACQUIESCENCE

Date: September 5th, 2023             Via Certified Mail No: 9590 9402 7968 2305 9574 56

Ref: Account number **PA-954349**

Greetings,

I, **Jonathan: Soave**, a natural individual, agent and secured party with duly executed power-of-attorney for the artificial person **JONATHAN SOAVE/Principal**, (hereinafter "Affiant"), after completing four notified and recorded attempts, listed below, hereby give NOTICE of <u>Irrevocable Estoppel by Acquiescence</u> upon the following instruments tendered to you:

- Affidavit of Truth & Proof of Claim, dated 6/7/23, via Certified mail no. 9589 0710 5270 0612 6562 72, requested your reply within 30 days;
- Notice of Fault and Opportunity to Cure, dated 7/8/23, via Certified mail no. 9590 9402 7968 2305 8466 20, requested your reply within 10 days;
- Second Notice of Fault and Opportunity to Cure, dated 7/19/23, via Certified mail no. 9590 9402 7968 2305 8469 89, requested your reply within 10 days;
- Final Notice of Fault and Opportunity to Cure, dated 8/3/23, via Certified mail no. 9590 9402 6906 1104 6781 76, requested your reply within 10 days;

**SOFI BANK, N.A.** (hereinafter SOFI) has received the negotiable instrument No. 982306001 dated 6/7/2023 in the amount of $60,000.00 (Sixty Thousand Dollars) and failed to give proper credit to the account, which constitutes dishonor, per UCC § 3-503. Further, I have made a tender for payment for accord and full satisfaction of the account and refusal discharges the debt, per UCC § 3-603.

Despite my multiple attempts and grace periods seeking a resolution, **SOFI** has failed to properly rebut my sworn Affidavit, and has acquiesced to the terms therein. Additionally, **SOFI** has failed to provide the following specific and reasonable documentary evidence necessary to verify said alleged debt and prove their claim:

- All documentary evidence for both the public and private side ledger, in the form of an audit certification in accordance with GAAP, per 12 U.S. Code 1831n(2)(a);

- Verification of claim via a **sworn statement**, per the FDCPA at 15 USC 1692(e) & (g). According to Black's Law Dictionary, Revised 4th Edition, _verification_ is defined as "confirmation of correctness, truth, or authenticity by affidavit, oath, or deposition";

- Proof that you are the Holder in Due Course, per UCC, of said note by providing the original note or a certified true copy of the original, front and back sides including endorsements, establishing your right of claim;

- Documentary proof that my signature and note for said loan did not 100% pay off said loan in full at closing;

THEREFORE, I hereby serve NOTICE that **SOFI's** actions have created a permanent and irrevocable Estoppel by Acquiescence, forevermore barring **SOFI** and any and all of its agents, principals, or assigns, from bringing any claims, legal actions, orders, demands, lawsuits, charges, levies, penalties, damages, interests, liens or expenses, whatsoever, against the man Jonathan: Soave, and/or the artificial person JONATHAN SOAVE.

FURTHERMORE, **SOFI** and any and all of his agents, principals, or assigns, by said dishonor and failure, have tacitly agreed to the following terms and conditions:

1. THAT the alleged debt did not exist and/or now has full accord and satisfaction;

2. THAT any related derogatory remarks on my consumer credit report shall now be removed and replaced with "paid on time" or "paid as agreed";

3. THAT this matter is legally and lawfully permanently closed and settled, with prejudice;

4. THAT the self-executing contract and Fee Schedule provided with my first communication to you is binding, under which you have taken specific prohibited actions and, as a result, have incurred billing;

5. THAT you have taken retaliatory and adverse action against a consumer asserting his rights, by assigning this account to collection and willfully making incorrect reports to my consumer credit report, for which you have assumed civil liability;

6. THAT you are in violation of 18 USC § 1341 - Frauds and swindles;

7. THAT you are in violation of 15 USC § 1681a(2)(A)(i), by committing illegal consumer credit reporting;

8. THAT you have committed defamation against me, and as a result, have damaged my reputation and caused me severe emotional distress, in addition to impacting my ability to obtain credit, housing, employment, goods, and services;

9. THAT you have breached your fiduciary duties and are in violation of UCC § 3-307 and 12 USC § 504, which is civilly punishable up to $1,000,000.00 per day;

Please take notice of the foregoing and enclosed invoice and govern yourself accordingly.

Should any controversy and/or dishonor arise regarding this now agreed upon matter, **SOFI** agrees to be responsible for all costs for enforcement, litigation, arbitration and attorney fees. **SOFI** further agrees to compensate Affiant $5,000.00 (Five Thousand Dollars) per court and/or arbitration appearance, whether in person or remote.

SEVERABILITY UNDER LAW: Should any part of this instrument become invalid or unenforceable under applicable law, such part shall be ineffective to the extent of such invalidity only, without in any

way affecting the remaining parts of such provision or the remaining provisions of this instrument.

Notice To Agent Is Notice To Principal
Notice To Principal Is Notice To Agent
Silence Is Acquiescence

FURTHER AFFIANT SAYETH NAUGHT.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on __07 / 05 / 23__ .

*by: Jonathan: Soave / agent*

By: Jonathan: Soave - Sui Juris
Without Prejudice - Done In Good Faith

Enclosed: Invoice No. 230902

JURAT

Florida State                                    )
County of __Palm Beach__          ) ss.

Sworn before me, this __5th__ day of __September__ 2023, by Jonathan Soave, a natural person, who proved to me on the basis of satisfactory evidence to be the person before me.

_____     Seal:
Signature of Notary Public

__Rosanna Lora__
Notary Name, Title

My commission expires __Apr, 11 2025__

ROSANNA LORA
Notary Public - State of Florida
Commission # HH 116300
My Comm. Expires Apr 11, 2025

# Exhibit E

# INVOICE

:Jonathan: Soave
c/o 1903 SW 18th St
Boynton Beach, Florida [33426]

**Bill To:**
**SOFI BANK, N.A.**
Accounts Payable
2750 East Cottonwood Pkwy
Cottonwood Heights, UT 84121
Via Certified Mail No. 9590 9402 7968 2305 9574 56

**Please make check payable to:**
Jonathan Soave
c/o 1903 SW 18th St
Boynton Beach, Florida [33426]

**Invoice No:** 230902
**Date:** 09/05/2023
**Due Upon Receipt**

| QUANTITY | DESCRIPTION | UNIT PRICE | PRICE |
|---|---|---|---|
| 1 | mail fraud, 18 USC § 1341 | $150,000.00 | $150,000.00 |
| 1 | illegal consumer credit reporting, 15 USC § 1681a(2)(A)(i) | $150,000.00 | $150,000.00 |
| 1 | refusing negotiable instrument (No. 982306001) | $70,000.00 | $70,000.00 |
| 91 | breach of fiduciary duty, daily | $25,000.00 | $2,275,000.00 |
| 1 | breach of consumer's confidentiality, 15 USC § 6801 | $150,000.00 | $150,000.00 |

| | |
|---|---|
| SUBTOTAL | $2,795,000.00 |
| DISCOUNT | 0.00 |
| SALES TAX | N/A |
| BALANCE | 0.00 |
| TOTAL | $2,795,000.00 |

Failure to pay in full within 10 days of receipt of this invoice will result in immediate court action. Billable party (Bill-to) is responsible for all costs for enforcement of collection, including court and attorney fees.

**Payment Terms Available [x]** Installment _1_ of _1_